UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------x
Michael GANSAS,

                Plaintiff,

  -against-                         <u>MEMORANDUM AND ORDER</u>
                                  05-CV-5484

THE CITY OF NEW YORK, et al.,

                Defendants.

-------------------------------------------------x

GLASSER, United States Senior District Judge

## **INTRODUCTION**

This action arises out of the termination of Michael Gansas ("Plaintiff" or "Gansas") from his employment with the City of New York ("the City") and the subsequent decision by the Marine Beneficial Association ("MEBA"), the union that represented him, not to pursue arbitration on his behalf. Plaintiff brings 42 U.S.C. § 1983 claims against the City, Michael Bloomberg as Mayor of the City of New York (the "Mayor"), Iris Weinshall as the Commissioner of the City of New York Department of Transportation (the "NYCDOT Commissioner"), and Patrick Ryan ("Ryan"). Against MEBA, Gansas brings a state law claim for breach of the duty of fair representation.[1] Before the Court is a motion to dismiss on behalf of the Mayor, the NYCDOT Commissioner, and the City (collectively the "City Defendants") pursuant to Rule

---

[1] The Complaint also alleged that MEBA violated 42 U.S.C. § 1983. That claim has been abandoned by Plaintiff, but would, in any event, be dismissed were it pressed. <u>See</u> <u>Ciambriello v. County of Nassau</u>, 292 F.3d 307, 323-24 (2d Cir.2002) (holding that labor union is not generally a state actor).

1

12(b)(6) of the Fed. R. Civ. Proc. MEBA moves to dismiss pursuant to Rules 12(b)(1) and 12(b)(6).

## BACKGROUND

The following allegations are drawn from the Complaint and documents incorporated by reference, cast in the light most favorable to the Plaintiff, as required on a motion to dismiss.

On October 15, 2003, Gansas reported to work at the City of New York Department of Transportation ("NYCDOT"), St. Georges Ferry Terminal. Because the assigned captain for the M/V Andrew J. Barbieri (the "Barbieri") was out sick, Gansas was assigned to captain that vessel.

At about 3:00 pm, the Barbieri collided with a maintenance pier at the St. Georges Terminal. Gansas prevented the Barbieri from colliding with other objects, saving the Barbieri's passengers from additional harm, and called emergency services. United States Coast Guard ("USCG"), the New York Police Department, ("NYPD"), the New York Fire Department and Emergency Medical Services responded.

Shortly after these agencies arrived on the scene, and while Gansas was under severe emotional distress, USCG and NYPD personnel interviewed him. During this interview, Gansas was told that numerous people had been killed or injured and that Assistant Pilot Richard Smith had committed suicide. Gansas was interviewed from 4:00 pm until 11:00 pm on that evening, during which time both the NYPD and the USCG took statements from him and he was not offered any food.

After the interview, NYPD transported Gansas to the hospital for observation; he had reported severe tightness in his chest. As a result of these events, Gansas sought

medical treatment and was under the care of a doctor for some subsequent months.

Between October 15, 2003 and October 23, 2003, the Mayor, the NYCDOT Commissioner, Ryan and other City of New York employees met to discuss the events of October 15, 2003. During these meetings, they allegedly conspired to release false statements to the press regarding what rules and regulations were in effect for the operation of the Barbieri. For example, Ryan, the NYCDOT's highest ranking employee with daily oversight of the Staten Island Ferry operations, falsely stated that certain rules required Gansas to be in the pilothouse at the time of the collision. Ryan knew his statements were false and made them with the intent of blaming the collision on Gansas. The Mayor, the NYCDOT Commissioner, and Ryan knew these rules had never been implemented. Moreover, the Mayor, without knowing any of the facts and circumstances regarding the operation of the Barbieri, the cause of the collision, or Gansas's duties on October 15, 2003, called Gansas a coward and blamed him for the collision and the resulting deaths.

On October 21, 2003, counsel for the City, NYCDOT, and the National Transportation Safety Board ("NTSB") requested an interview with Gansas. Gansas agreed to speak with representatives from the City, NYCDOT, and the NTSB, but requested a brief adjournment on the advice of his physician.

Gansas received a letter on October 22, 2003, refusing to grant him the adjournment. The letter, delivered by Robert Grotell the Deputy Commissioner of NYCDOT, directed him to appear "at the DOT Command Vehicle at the St. George Ferry Terminal, near the passenger drop-off, on Wednesday, October 22, 2003 to be interviewed by the Firm representing the City and the Department of Transportation in

connection with the October 15, 2003 Staten Island ferry accident." (Bennett Decl., Ex. C). The letter further advised Gansas that "[his] failure to comply with this direction will subject [him] to disciplinary charges." On October 22, 2003, NYCDOT suspended Gansas without pay pending the findings of the official investigation.

On October 27, 2003, the City charged Gansas with violating the NYCDOT Code of Conduct. The charges were as follows:

> CHARGE I: The Respondent is in violation of Paragraph 1 of the Code by engaging in conduct tending to bring the City of New York, DOT and any other City agency into disrepute
>
> Specification 1: On October 20, 2003, the Respondent was given a verbal directive by legal counsel to cooperate with the [NTSB] investigation on Tuesday, October 21, 2003. The Respondent failed to comply with legal counsel's directive and failed to comply with the NTSB investigation on October 21, 2003.
>
> Specification 2: As a result of the Respondent's failure to appear on October 21, 2003, the NTSB subpoenaed the Responded to appear on October 22, 2003. On October 22, 2003, the Respondent received written confirmation from Deputy Commissioner Robert Grotell directing the Respondent to cooperate with the NTSB subpoena. The Respondent failed to comply with Deputy Commissioner Grotell's directive to appear pursuant to the NTSB subpoena on October 22, 2003.
>
> Specification 3: On October 20, 2003, the Respondent was given a verbal directive by legal counsel to be interviewed on Tuesday, October 21, 2003 by the [NYCDOT] in connection with the October 15, 2003 Staten Island Ferry accident. The Respondent failed to comply with legal counsel's directive to be interviewed on October 21, 2003.
>
> Specification 4: As a result of the Respondent's refusal to comply with the verbal directive from legal counsel, the

|                  | Respondent received written notification from Deputy Commissioner Robert Grotell directing the Respondent to be interviewed on October 22, 2003 by the [NYCDOT] in connection with the October 15, 2003 Staten Island Ferry accident. The Respondent failed to comply with Deputy Commissioner Grotell's directive to be interviewed on October 22, 2003. |
|---|---|
| CHARGE II: | The Respondent is in violation of Paragraph 30 of the Code in that he failed, refused, or neglected to obey any lawful order of a supervisor or superior. |
| Specification 1: | On October 22, 2003, the Respondent received written notification from Deputy Commissioner Robert Grotell directing the Respondent to cooperate with the [NTSB] subpoena. On October 22, 2003, the Respondent failed and refused to obey Deputy Commissioner Grotell's lawful order to cooperate with the [NTSB] subpoena. |
| Specification 2: | On October 22, 2003, the Respondent received written notification from Deputy Commissioner Robert Grotell directing the Respondent to be interviewed on Wednesday, October 22, 2003 by the City of New York and the [NYCDOT] in connection with the October 15, 2003 Staten Island Ferry accident. The Respondent failed and refused to obey Deputy Commissioner Grotell's lawful order to appear for the October 22, 2003 interview. |
| CHARGE III: | The Respondent is in violation of Paragraph 59 of the Code in that he failed to cooperate with the Offices of Legal Affairs and Litigation Support in the defense and prosecution of matters in litigation involving DOT and the City of New York. |
| Specification 1: | On October 22, 2003, the Respondent received written notification from Deputy Commissioner Robert Grotell directing the Respondent to cooperate with the NTSB subpoena. The Respondent failed to comply with Deputy Commissioner Grotell's directive to appear pursuant to the NTSB subpoena on October 22, 2003. |
| Specification 2: | On October 22, 2003, the Respondent received |

| | |
|---|---|
| | written notification from Deputy Commissioner Robert Grotell directing the Respondent to be interviewed by the City of New York and the [NYCDOT] in connection with the October 15, 2003 Staten Island Ferry accident. The Respondent failed to cooperate with the agency's Office of Legal Affairs and Litigation Support in the defense and prosecution of issues pertaining to the October 15, 2003 Staten Island Ferry accident. |
| CHARGE IV: | The Respondent is in violation of Paragraph 6 of the Code by violating any law, rule, or regulation of the City of New York pertaining to the proper conduct of employees. |
| Specification 1: | Section 1123 of the new York City Charter requires that officers or employees of the city shall not, after lawful notice or process, willfully refuse or fail to appear before any board authorized to conduct any hearing or inquiry. On October 1, 2004 [sic] the NTSB subpoenaed the Respondent to appear on October 22, 2003. The Respondent failed to appear before the NTSB on October 22, 2003 pursuant to the subpoena. |
| CHARGE V: | The Respondent is in violation of Paragraph 2 of the Code by engaging in conduct prejudicial to the good order and discipline of DOT. |
| Specification 1: | Repeat and reiterate Charges I - IV and the respective specifications. |

On November 10, 2003, an informal conference was held between NYCDOT and Gansas to consider the charges. Howard Altschuler was the conference leader. Altschuler, at all relevant times, has been a City employee. During the hearing, Altschuler allegedly demonstrated clear bias against Gansas, a total lack of understanding of the charges, and advocated for the City. The NYCDOT representative offered no evidence to support the charges leveled against Gansas on October 27, 2003. On November 11, 2003, Gansas faxed a letter to Altschuler outlining his objections to

6

the charges. Altschuler issued his Informal Conference Decision on November 13, 2003, finding that Charges I-V were substantiated and recommending termination. On November 17, 2003, prior to Gansas responding to Altschuler's recommendation, NYCDOT scheduled an expedited administrative trial and hearing on the charges for November 20, 2003.

On November 20, 2003, Gansas filed a Refusal of Recommended Penalty in response to Altschuler's recommendation. This document read, in relevant part:

> I, **Michael Gansas**, acknowledge receipt of a copy of the Charges and Specifications. I have been advised that the penalty recommended for the said Charges and Specifications as a result of the Informal Conference held on November 10, 2003, is as follows:
>
> **Termination**
>
> **I REFUSE TO ACCEPT SAID DECISION AND RECOMMENDED PENALTY AND ELECT TO PROCEED WITH THE GRIEVANCE PROCEDURE.**
>
> I am fully aware that as an alternative, the union, with my consent, may elect to proceed in accordance with the Grievance Procedure set forth in its contract with the City of New York, including the right to proceed to binding arbitration, **and so I consent.** As a condition for submitting this matter to the Grievance Procedure, I hereby file with the Office of the Advocate General, this written waiver of the right to utilize the procedure available to me pursuant to Sections 75 and 76 of the Civil Service law or any other administrative or judicial tribunal, except for the purpose of enforcing an arbitrator's award, if any.
>
> I am also aware that I may (if applicable) be entitled to a disciplinary hearing pursuant to Section 75 of New York State Civil Service Law and that I may elect to appeal from an adverse decision rendered after such hearing either to the Supreme Court of the State of New York or to the City Civil Service Commission in accordance with the procedures set forth in Sections 75 and 76 of the Civil Service Law.
>
> **I AM FULLY AWARE THAT THIS WAIVER OF MY RIGHTS TO A SECTION 76 HEARING IS FINAL, IRREVOCABLE AND BINDING.**

(Profeta Decl., Ex. I (all emphasis in original document)).

Instead of the administrative trial and hearing, a Step II grievance hearing was held on November 24, 2003. Gansas was represented at this meeting by MEBA attorneys. The Step II decision of Gordon Goldberg upheld the recommendation of termination. This decision allegedly resulted from pressure from the City, NYCDOT, the Mayor, the NYCDOT Commissioner, Ryan and others who wanted to terminate Gansas under any circumstances. Some time thereafter, NYCDOT served Gansas with notice that it had adopted the recommendation of termination.

MEBA advised the City that it would invoke arbitration on behalf of Gansas. MEBA attorneys Gleason and Doyle, who had represented Gansas at the Step II hearing, advised Gansas's personal counsel that they would act as Gansas's legal counsel in the arbitration proceeding. Gleason and Doyle were told that under no circumstances would Gansas terminate his right to arbitrate. Gleason and Doyle said that they would terminate the arbitration only if Gansas pled guilty to a crime. Gansas never pled guilty to a crime, but Gleason and Doyle, without consulting with Gansas or his counsel, and errantly believing that he had pled guilty to a crime, waived Gansas's right to arbitration.

## DISCUSSION

I. **Motion to Dismiss Standards**

The standards for granting a motion to dismiss for failure to state a claim are routinely repeated. Recently, they have been reiterated by the Court of Appeals in <u>Nechis v. Oxford Health Plans, Inc.</u>, 421 F.3d 96 (2d Cir.2005):

Dismissal of a complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a

8

claim upon which relief can be granted is appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Harris v. City of New York, 186 F.3d 243, 250 (2d Cir.1999) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The appropriate inquiry is not whether a plaintiff is likely to prevail, but whether he is entitled to offer evidence to support his claims. See Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir.1998). At this stage, we assume that all well-pleaded factual allegations are true and draw all reasonable inferences in the plaintiff's favor. See E.E.O.C. v. Staten Island Sav. Bank, 207 F.3d 144, 148 (2d Cir.2000). In addition, we limit our consideration to facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference. See Newman & Schwartz v. Asplundh Tree Expert Co., 102 F.3d 660, 662 (2d Cir.1996).

Nechis, 421 F.3d at 100.

## II.   The City Defendants' Motion to Dismiss

The City Defendants move to dismiss the single claim stated against them for violation of 42 U.S.C. § 1983. That statute provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

In order to dismiss a § 1983 claim, it must be clear that the plaintiff could prove no set of facts that would support the conclusion that "(1) defendants were acting under color of state law at the time of the alleged [act]; and (2) the action was a deprivation of a constitutional or federal statutory right." Washington v. County of Rockland, 373 F.3d 310, 315 (2d Cir.2004). It is undisputed that the City Defendants acted under color of state law; they contend, however, that even if the allegations as pleaded are true, there is no basis for finding a constitutional deprivation.

9

Gansas alleges that the City and the NYCDOT deprived him of due process. The essence of his theory is the contention that "after being served with disciplinary charges, [he] was not afforded rights and remedies that satisfied constitutional due process requirements." (Pl. Mem. at 12).

To determine whether constitutional due process requirements have been met, the Court first determines whether the plaintiff has a property or liberty interest protected by the Constitution. See Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). If that protected interest is identified, "a court must then consider whether the government deprived the plaintiff of that interest without due process. The second step of the analysis thus asks what process was due to the plaintiff, and inquires whether that constitutional minimum was provided in the case under review." Narumanchi v. Board of Trustees of the Connecticut State University, 850 F.2d 70, 72 (2d Cir.1988) (citing Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). The Complaint fails to state a claim because, assuming plaintiff had a protected property or liberty interest,[2] none of the allegations support an inference that there was any deficiency in the process by which those interests were affected.

Plaintiff correctly states that "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner," Mathews v. Eldridge 424 U.S. 319, 333, 96 S.Ct. 893, 902 (1976). Absent a more particularized inquiry, however, that principle enunciated in Mathews provides little guidance in resolving the present claim; due process is highly contextual:

---

[2] The Complaint does not specifically identify the basis of the liberty or property interest at issue, but the Court infers that Gansas could prove a property interest in his position, as protected by the collective bargaining agreement and civil service laws, as well as in his reputation.

> The phrase [due process of law] formulates a concept less rigid and more fluid than those envisaged in other specific and particular provisions of the Bill of Rights. Its application is less a matter of rule. Asserted denial is to be tested by an appraisal of the totality of facts in a given case. That which may, in one setting, constitute a denial of fundamental fairness, shocking to the universal sense of justice, may, in other circumstances, and in the light of other considerations, fall short of such denial.

Betts v. Brady, 316 U.S. 455, 462, 62 S.Ct. 1252, 1256 (U.S. 1942). As a general rule, where a public employee possesses a constitutionally protected property interest in his employment, terminable only for cause, due process is satisfied if the employee is provided notice and an opportunity to be heard before termination, followed by a prompt post-termination hearing. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546, 105 S.Ct. 1487, 1495 (1985).

Plaintiff offers two related bases for concluding that the City Defendants violated his due process rights: First, he contends that hearing officers Altschuler and Goldberg were biased, thus rendering insufficient his opportunity to be heard prior to termination. Second, he observes that because the post-termination hearing never actually occurred, the biased pre-termination decisions were never adversarially challenged. Assuming these allegations are correct, however, he has nonetheless failed to state a claim.

As to the question of Altschuler and Goldberg's neutrality, the Second Circuit Court of Appeals, in Locurto v. Safir, has squarely held that due process does not require that the opportunity to be heard prior to termination must take place before a neutral adjudicator:

> First, such a requirement would run contrary to the letter and the spirit of Loudermill, which insisted only that the public employer give its employee notice of any charges and a chance to hear and respond to any evidence

11

> against him. See 470 U.S. at 545-46, 105 S.Ct. 1487. We fully agree with the view that the costs to the state of additional pre-deprivation guarantees (in this case, a neutral adjudicator) outweigh possible benefits to the employee, given the availability of a full post-deprivation hearing. See id. Second, every circuit that has addressed this question has reached a conclusion similar to the one we reach.

264 F.3d 154, 174 (2d Cir.2001). Even assuming that Altschuler and Goldberg were biased in favor of the City, Locurto compels the conclusion that such bias does not, in and of itself, constitute a violation of due process.

The Locurto holding was "necessarily limited to the situation where the state affords plaintiff, subsequent to his termination, a full adversarial hearing before a neutral adjudicator." Id. On the basis that the post-termination hearing never actually occurred, Plaintiff errantly concludes that his right to be "afforded" a full-hearing was violated. The Merriam-Webster definition of the word "afford" that is relevant in this context is "to make available, give forth, or provide naturally or inevitably." The City need only make available the opportunity for an adversarial hearing, of which the employee is free to avail himself or not. In this case, the allegations in the Complaint, and the documents incorporated by reference, make it plain that Gansas was afforded such an adversarial hearing and that he waived it in favor of the collective bargaining grievance procedure. (See Profeta Decl., Exs. H, I). Gansas's waiver of his administrative hearing in favor of the grievance procedure, and the fact that his counsel subsequently failed to enforce his right to arbitration under those procedures, do not imply a due process violation against the City. In the final analysis, it is the opportunity for an adversarial hearing or equivalent grievance procedure, whether or not the terminated employee actually avails himself of such processes, that satisfies the City's

constitutional obligations. See Komlosi v. New York State Office of Mental Retardation, 64 F.3d 810, 818 (2d Cir.1995) ("the opportunity for an arbitration hearing [which plaintiff waived] provided the "name-clearing hearing" required to avoid a due process violation." (emphasis added)); Narumanchi, 850 F.2d at 72 (affirming the district court's finding that "the limited procedural rights guaranteed . . . [were] satisfied by the pre-deprivation notice and hearing rights provided in the grievance procedures under the [collective bargaining] Agreement."). To hold otherwise would allow the nonsensical result that a terminated employee, offered an adversarial hearing or the equivalent grievance procedure, could waive his right to a hearing, abandon his efforts at arbitration, and then file a claim against the City for a due process violation.

Consistent with the admonition in Betts against "formulating the guarantee [of Due Process] into a set of hard and fast rules the application of which in a given case may be to ignore the qualifying factors therein disclosed," Betts 316 U.S. at 462, the Court also finds that not only were the City's actions consistent with precedent in Loudermill, Locurto, Komlosi and Narumanchi, but the facts of this case as alleged do not warrant a departure from well-established guidelines to recognize some expanded notion of Due Process rights. By virtue of his presence on the Barbieri at the time of the accident, Gansas was in a unique position to offer important information about the fatal accident, whether or not he was personally responsible for any of the damage. The City's efforts to interview him at the earliest possible time were entirely warranted, and the seriousness of his failure to participate in those interviews cannot be overstated. The Court notes, though not for the ultimate purpose of passing on the motion to dismiss, that sworn statements submitted by the parties cast doubt on whether Gansas was

13

actually medically unable to participate in the October 22 interview and suggest that efforts to delay his participation were part of a legal strategy formulated by counsel. By way of a few observations, the doctor's note relied upon by Plaintiff does not, by its terms, preclude him from participating in an interview. (See Bennett Decl., Ex. B). Moreover, Counsel's continued insistence that Gansas was willing to appear voluntarily on October 21 or 22, but also requested an adjournment for a few weeks, is inexplicable and evidence of pretext. Either he would or he wouldn't appear voluntarily on that date, and apparently he wouldn't. And finally, the Court notes that when Gansas ultimately did appear, pursuant to subpoena and court order on November 6, 2003, he exercised his Fifth Amendment right to remain silent, in accordance with counsel's advice, on issues ranging from his recollection of the day's events, to questions regarding his training and background, to his knowledge of DOT rules, regulations, and practices. In all, he exercised his Fifth Amendment rights more than fifty times, refusing to answer any questions. (See Profeta Decl., Ex. A). Against this background, the other allegations of the Complaint, and in recognition of precedent, the Court finds hollow Gansas's allegation that he was denied Due Process by the City.

Because Gansas has not pleaded any facts from which the Court could infer that the City Defendants deprived him of due process, the City Defendants' motion to dismiss must be granted.

## II. MEBA's Motion to Dismiss

MEBA moves to dismiss Gansas's claim of a breach of the duty of fair representation for lack of subject matter jurisdiction and failure to state a claim, raising the affirmative defense that the claim is barred by the statute of limitations.

### A. Subject-matter jurisdiction

MEBA denies that under N.Y. Civ Serv. L. § 200, et. seq., the so-called "Taylor Law," and related legislation this Court may properly exercise subject matter jurisdiction over Plaintiff's claim. N.Y. Civ. Serv. L. § 205 creates the New York State Public Employment Board ("PERB") and grants PERB broad authority "to resolve, pursuant to such procedures, disputes concerning the representation status of employee organizations of employees of the state and state public authorities upon request of any employee organization, state department or agency or state public authority involved," N.Y. Civ. Serv. § 205(5)(b). These powers include the "exclusive, nondelegable, jurisdiction," except in the City of New York, "to establish procedures for the prevention of improper employer and employee organization practices" and "to issue a decision and order directing an offending party to cease and desist from any improper practice." § 205(5)(d). Within the City of New York, § 205(5)(d) explicitly confers its authority upon the Board of Collective Bargaining established by the City Charter. Id. See also NYC Charter § 1171 (creating the "Board of Collective Bargaining").

MEBA contends that the "exclusive, nondelegable" grant of jurisdiction upon the Board of Collective Bargaining precludes this Court from hearing Plaintiff's claim that MEBA breached its duty of fair representation. Such a holding would be at odds with the New York Courts, which have held that "[t]he Supreme Court retains jurisdiction over all labor contracts when the question of fair representation arises. This provides employees with assurance of impartial review of union conduct. To hold otherwise . . . would strip the public employee of the protection afforded by the fair representation doctrine." DeCherro v. Civil Service Employees Assoc., 60 A.D.2d 743, 400 N.Y.S.2d

902 (N.Y.A.D.3.1977). See also Tantillo v. McDonald, 223 A.D.2d 168, 173, 645 N.Y.S.2d 804, 807 (N.Y.A.D.1.1996) ("A claim for breach of a union's duty of fair representation is an exception to the pre-emption doctrine, and this court would have jurisdiction over such a claim") (citing Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)). On this basis, the Court finds that it has subject matter jurisdiction over the claim.

### B. Statute of limitations

The statute of limitations for breach of a union's duty of fair representation to public employees in New York is established in CPLR § 217(2)(a), which provides:

> Any action or proceeding against an employee organization . . which complains that such employee organization has breached its duty of fair representation regarding someone to whom such employee organization has a duty shall be commenced within four months of the date the employee or former employee knew or should have known that the breach has occurred, or within four months of the date the employee or former employee suffers actual harm, whichever is later.

See also Schermerhorn v. Metropolitan Transportation Authority, 156 F.3d 351 (2d Cir.1998) (affirming a grant of summary judgment dismissing the complaint as time-barred when members published a bulletin evidencing their actual notice of the actions giving rise to their claim more than six months prior to filing the Complaint).

MEBA contends that it is undisputed that Gansas became aware of the alleged breach of the duty of fair representation no later than May 10, 2005. As evidence of such knowledge, MEBA submits a letter dated May 10, 2005, signed by Bennett, Gansas's counsel in the present action, and addressed to William Doyle, MEBA's counsel. In that letter, Bennett states, in relevant part:

> We refer to our conversation last week regarding the referenced matter [Gansas v. City of New York] wherein you advised that the Union decided some time ago not to pursue [Gansas's] right to arbitrate his employment

> grievance with the New York City Department of Transportation ("DOT").
> In addition we learned from the DOT's outside counsel, Freehill, Hogan &
> Mahar, that the Union actually entered into a stipulation to that effect
>
> ***
>
> We believe the Union's failure to consult with Mr. Gansas and/or one of
> his personal attorneys is a violation of his rights under his union contract.
>
> ***
>
> Moreover, we stated on several occasions that if <u>the</u> Union <u>was</u> not willing
> to pursue arbitration, that we would continue to pursue it. Accordingly,
> we intend to take every step necessary to protect Mr. Gansas' right to
> arbitrate his employment grievance.

(<u>Byington Decl.</u>, Ex. B ("the Letter") (emphasis in original)). The Complaint was filed on November 22, 2005, more than six months after the Letter was sent.

"[W]hen matters outside the pleadings are presented in response to a 12(b)(6) motion," a district court may "convert the motion to one for summary judgment under Fed.R.Civ.P. 56" so long as "all parties [have] the opportunity to present supporting material." <u>Fonte v. Board of Managers of Continental Towers Condominium</u>, 848 F.2d 24, 25 (2d Cir.1988). The purpose of the rule is to ensure that parties are not unreasonably surprised by a grant of judgment and have the opportunity to respond to any facts introduced from outside of the pleadings. <u>See</u> <u>In re G. & A. Books</u>, 770 F.2d 288 (2d Cir.1985), <u>cert. denied</u>, 475 U.S. 1015, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986) (essential inquiry in <u>sua sponte</u> conversion of a Rule 12 motion into a Rule 56 motion is "whether the [parties] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or [were] taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.").

In this case, MEBA submitted a copy of the Letter along with its motion to dismiss. Plaintiff did not respond to the plain evidence that his claim was untimely, neither in his Response Memorandum of Law, nor at oral argument. It can hardly come

17

as a surprise, however, considering that the evidence thereof is in a letter penned by Plaintiff's counsel, appended to the motion, and contemplated at oral argument, that the Court would find the present action barred on the undisputed fact that notice of the actions which gave rise to the claim was actually received by Plaintiff more than six months prior to filing the Complaint.

Because the claim is barred by the undisputed facts demonstrating Plaintiff's knowledge of his claim more than six months prior to filing the Complaint, the Court converts MEBA's motion to dismiss into a motion for summary judgment and grants summary judgment for the defendant.

## **CONCLUSION**

For the foregoing reasons, the motion to dismiss Count One is granted. The motion to dismiss Count Three is converted to a motion for summary judgement, and judgment is entered on behalf of the defendant, MEBA.

SO ORDERED.

Dated:     Brooklyn, New York
           July 28, 2006

_____/s/_____
I. Leo Glasser
United States Senior District Judge

Copies of the foregoing memorandum and order were electronically sent to:

<u>Counsel for the Plaintiff</u>

William R. Bennett, III
Bennett, Giuliano, McDonnell & Perrone, LLP
Email: wbennett@bgmplaw.com


<u>Counsel for Defendants</u>

Lawrence J Profeta
City of New York Corporation Counsel
Email: lprofeta@law.nyc.gov

John Howard Byington, III
Meyer Suozzi English & Klein, P.C.
Email: jbyington@msek.com